Torrez v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-145-CR

     VICTOR TORREZ,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 195th District Court
Dallas County, Texas
Trial Court # F92-05030-N
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant Torrez appeals from his conviction for indecency with a child, for which he was
sentenced to ten years, probated.
      Appellant was indicted for indecency with a child, specifically that he "did unlawfully,
knowingly and intentionally engage in sexual contact with Christine Amanda Torrez, complainant
and a child younger than seventeen years of age and not the spouse of defendant, by contact
between the hand of defendant and the genitals of complainant with the intent to arouse and gratify
the sexual desire of" Appellant.
      Appellant pled not guilty. The jury found Appellant guilty and he elected to have the judge
assess punishment. He was sentenced by the judge to ten years, probated.
      Appellant appeals on one point of error: "The evidence is insufficient as a matter of law to
prove the necessary element that Appellant's actions were intended to `arouse and gratify the
sexual desires of the appellant.'"
      Specifically, Appellant argues that there is no evidence as to whether Appellant committed
the alleged acts, if he did, with the intent to arouse or gratify his sexual desire, as opposed to the
possibility that his intent was to arouse the sexual desire in the complaining witness.
      Where there is a claim of insufficient evidence to support a verdict in a criminal case, the
reviewing court should determine whether, after viewing the evidence in the light most favorable
to the prosecution, any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, S.Ct. 1979); Turner v. State, 805
S.W.2d 423, 427 (Tex. Crim. App. 1991).
      The requisite intent to arouse or gratify the sexual desire of any person can be inferred from
the appellant's conduct, his remarks, and all surrounding circumstances. McKenzie v. State, 617
S.W.2d 211, 216 (Tex. Crim. App. 1984); Branson v. State, 825 S.W.2d 162, 168 (Tex.
App.—Dallas 1992); Bowles v. State, 550 S.W.2d 84, 85-86 (Tex. Crim. App. 1977; Turner v.
State, 600 S.W.2d 927, 729 (Tex. Crim. App. 1980).
      Complainant testified that in the summer of 1992 while she was seven years old, she went to
her father's house for a weekend visit. [Her parents were divorced and the mother had custody]. 
She testified that her grandfather, the appellant, who lived next door to her father, sat down beside
her and had her sit on his lap; that while sitting on his lap, he rubbed her private parts, on top of
her clothing, in the area between her legs where you go "pee"; and that he did this as many as six
times.
      Several weeks later, prior to another scheduled visit to her father's house, she told her mother
she did not wish to go to her father's house and, upon close questioning, revealed to her mother
that Appellant had touched her on her private parts. Her mother made an outcry which resulted
in a police investigation and the indictment of Appellant.
      Appellant testified that he was fifty-seven years; that he was born in Mexico but had been in
the United States since 1946; that he has been married to his wife for forty years and is the father
of fifteen children; that he is disabled as a the result of an accident where he formerly worked; that
he had four years of pain because of back surgery; and that he is the pastor of a Pentecostal
church. He also testified that the complainant was mad at him for asking her to clean up some ice
cream she had thrown on the floor; and that he had problems with complainant's mother because
she was always asking his son for money. He further testified that he was not guilty; that it did
not happen; that he did not pick up complainant and have her sit on his lap; and that what he was
accused of, he would not do to anyone. Appellant's wife also testified she had problems with
complainant's mother because she was trying to get money from Appellant's son above his child
support, which he paid.
      In this record there is no evidence to support Appellant's suggestion that his actions may have
been undertaken to arouse the sexual desire on the part of the seven-year-old victim. The
complainant testified that Appellant initiated the contact between his hand and her genitals and did
so as many as six times. This indicates arousal and gratification on the part of Appellant. The
child did not realize Appellant was going to touch her private parts and she did not like it when
he did. The initiation of the contact between Appellant and the victim, and the length of that
contact, taken together, are sufficient to establish the intent to arouse and gratify Appellant. The
victim was anxious to forego the once enjoyable visits with her father because she was "scared
[Appellant] was going to do it again." The victim remained afraid of Appellant.
      After viewing all of the evidence in the light most favorable to the verdict, we hold that a
rational trier of fact could have found beyond a reasonable doubt the essential elements of the
indictment.
      Appellant's point is overruled and the judgment of the trial court is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Justice Cummings,
      Justice Vance, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed April 12, 1995
Do not publish
       



eft: 0.3in"> 
(2) the trial court finds, in a hearing conducted outside the presence of the jury, that the
statement is reliable based on the time, content, and circumstances of the statement; and
 
(3) the child testifies or is available to testify at the proceeding in court or in any other
manner provided by law.

Tex. Code Crim. Proc. Ann. art. 38.072 § 2(b) (Vernon Supp. 1993).
      The purpose of article 38.072 is to prevent any surprise to the defendant from the introduction
of outcry testimony. Gottlich v. State, 822 S.W.2d 734, 737 (Tex. App.—Fort Worth 1992, pet.
ref'd). The statute requires only that the state give the defendant adequate notice of the content
and scope of the statement. Id. at 737; see also Norris v. State, 788 S.W.2d 65, 68 (Tex. App.—
Dallas 1990, pet. ref'd).
      Warren received the summary of the testimony and had the opportunity to cross-examine the
witness outside the presence of the jury. Lisa Pilgrim's testimony differed from the State's notice
only with regard to whether J.S., or her younger sister, was the first to be abused by Warren. The
State's notice sufficed to apprise Warren of the content and scope of the outcry testimony, thus
avoiding the possibility of surprise and substantially complying with the requirements of article
38.072. See Tex. Code Crim. Proc. Ann. art. 38.072. Point two is overruled.
      In point three, Warren claims that the court erred in denying his motion for new trial because
the evidence was insufficient to support a conviction on aggravated sexual assault in count five of
the indictment. Warren was charged in count five with aggravated sexual assault committed
against L.S., a child younger than fourteen years of age. Following Warren's conviction on each
of the five counts, he filed a motion for new trial alleging that the evidence was insufficient to
support the jury's finding that Warren penetrated L.S's vagina with his finger. 
      In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed
in the light most favorable to the verdict, and if any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt, we must sustain the conviction. 
Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979);
Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Under the Jackson standard, we
do not position ourselves as a thirteenth juror in assessing the evidence; rather, we act as a final,
due-process safeguard ensuring only the rationality of the factfinder. See Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988). We have only the discretion to determine if any
rational trier of fact, considering the evidence admitted at trial, could have found the essential
elements of the offense beyond a reasonable doubt. See Rodriguez v. State, 819 S.W.2d 871, 873
(Tex. Crim. App. 1991). We do not make our own myopic determination from reading the cold
record. See Moreno, 755 S.W.2d at 867. We do not disregard, realign, or weigh evidence. See
id. The trier of fact is the sole judge of the weight and credibility of the witnesses and may
believe or disbelieve all or any part of any witness' testimony. Williams v. State, 692 S.W.2d
671, 676 (Tex. Crim. App. 1984). We do not resolve any conflict in fact or evaluate the
credibility of the witnesses. See Juarez v. State, 796 S.W.2d 523, 524 (Tex. App—San Antonio
1990, pet. ref'd). Moreover, in determining the sufficiency of the evidence to sustain a
conviction, we must consider all the evidence admitted before the trier of fact at the guilt-innocence stage of the trial. See Villalon v. State, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990).
      The law is well-settled that contradictory testimony does not render the evidence insufficient. 
Mercado v. State, 695 S.W.2d 25, 29 (Tex. App.—Corpus Christi 1985), aff'd, 718 S.W.2d 291
(1986). Later contradictory evidence does not destroy the probative value of earlier testimony. 
Id.
      A person commits the offense of aggravated sexual assault when the person intentionally or
knowingly causes the penetration of the female sexual organ of a child younger than fourteen years
of age. See Tex. Penal Code Ann. art. 22.021 (Vernon 1989). The Court of Criminal Appeals
in Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992), discussed the term
"penetration" in the context of the aggravated sexual assault statute; that is, "to penetrate" may
mean to "enter into." The court stated that words not specially defined by the legislature are to
be understood as ordinary usage allows, and that jurors may freely interpret statutory language to
have any meaning acceptable in common parlance. Id. at 409. The court concluded that, as long
as the contact "could reasonably be regarded by ordinary English speakers as more intrusive than
with [the] outer vaginal lips," the action falls within the meaning of "penetration." Id.
      L.S. testified at trial that she was nine years old and in the third grade. She told the jury that
Warren had come to live, one or two years before, in the same house where she, her mother, and
her sister lived. According to L.S., she and her twelve-year-old sister shared a room, in which
they took turns sleeping on the top bunk bed. One night, as she slept in the lower bunk, Warren
entered their room and kneeled on the floor beside her bed. She testified that he "put his head
down on my pillow and he stuck his hand in my private and twirled it around." She then
explained that it was his finger that he had put in her private. L.S. said that she told her sister
what had happened, and her sister then told their mother. She stated that she had told her mother
that she may have been dreaming because "I didn't know if Jack was gonna hurt me again or not." 
      L.S.'s mother, Connie Sullivan, testified concerning L.S.'s outcry about the offense. She
testified that her older daughter had told her that Warren was "messing with" L.S. Mrs. Sullivan
questioned L.S. about the incident, and L.S. told her that she woke up and that Jack had his hands
in her panties. Mrs. Sullivan stated that, when she asked L.S. whether she was sure about this,
L.S. said that she was sure but that she didn't know if she'd been dreaming or not.
      Dr. Charles McPherson, the pediatrician who examined L.S. after the June 14, 1991, incident
and who had examined many children for the possibility of sexual abuse, stated that in some
instances, when digital penetration is involved, the examining physician might find a laceration
or break in the child's hymen following a deep penetration of the child's vagina. However, he
stated that a normal physical examination does not necessarily mean that the child has not been
abused. Dr. McPherson explained that the distance from the opening of the vagina to the hymen
may be some distance, and that a person could penetrate the opening of the vagina without causing
harm to the hymen. He concluded that, although his examination of L.S. revealed nothing out of
the ordinary, that result did not necessarily indicate that her vagina had not been penetrated. He
testified that, in taking L.S.'s medical history on December 10, 1991, she stated that there had
been digital penetration and fondling by her mother's ex-boyfriend but she denied penile contact.
            The jury was instructed as follows:
Our law provides that a person commits an offense of Sexual Assault [i]f the person,
intentionally or knowingly, causes the penetration of the female sexual organ of a child
by any means.
 
The word "child" as used herein, means a person younger than seventeen (17) years of
age who is not the spouse of the actor.
 
Our law provides that a person commits the offense of Aggravated Sexual Assault if the
actor commits the offense of Sexual Assault as defined above and the victim is younger
than fourteen (14) years of age.
 
Now if you find from the evidence beyond a reasonable doubt that on or about the 14th
day of June, 1991, in Johnson County, Texas, the Defendant, Jack Andrew Warren, Jr.,
did intentionally or knowingly cause the penetration of the female sexual organ of [L.S.],
a child younger than 14 years of age and not the spouse of said Defendant, by penetration
the female sexual organ of [L.S.] with the finger of said Defendant, then you will find
the Defendant guilty as charged in COUNT FIVE of the indictment.

      A rational jury could find that L.S.'s description of Warren's actions—i.e., that he put his
finger in her "private" and "twirled it around"—described conduct more intrusive than contact with
her outer vaginal lips. Further, Dr. McPherson clarified that a child's vagina may be digitally
penetrated by the action of a finger filling the space between the outer lips of the vagina and the
hymen. Such an action might not produce any evidence of penetration absent a deeper intrusion
into the vagina.
      Viewed in the light most favorable to the verdict, any rational trier of fact could have found
the essential elements of aggravated sexual assault beyond a reasonable doubt. See Jackson, 443
U.S. at 318-19; Matson, 819 S.W.2d at 843. Point three is overruled.
      In point four, Warren claims that the court erred in denying his motion for new trial because
one member of the jury was allegedly coerced into a finding of guilt in exchange for a lighter
sentence regarding count five of the indictment. He contends that one juror changed her vote from
"not guilty" to "guilty" in exchange for a lighter sentence. The jury assessed life for each of the
first four counts of the indictment and fifty years on the fifth count. Warren's complaint only
addresses the verdict reached on count five.
      Warren attached an affidavit from one juror, Jean Ann Kim, to his motion for new trial. The
affidavit states that another juror, Mrs. Owens, was persuaded to change her vote from "not
guilty" to "guilty" based upon the representation that a lighter sentence would be assessed. 
      The State, in responding to Warren's motion, attached an affidavit from Mrs. Owens. Juror
Owens stated that, contrary to juror Kim's opinion, she did not change her vote in exchange for
a lighter sentence. Mrs. Owens stated that she "voted to find the defendant guilty on each count
of the indictment based solely on the evidence presented at trial." She further stated that any
allegation to the contrary was false.
      The Rules of Appellate Procedure provide that a new trial is warranted "where the court finds
the jury has engaged in such misconduct that the accused has not received a fair and impartial
trial." Tex. R. App. P. 30(b)(8). What constitutes such a degree of misconduct as to deny the
accused a fair and impartial trial must be determined upon the facts of each case. Heredia v. State,
528 S.W.2d 847, 853 (Tex. Crim. App. 1975).
      The granting or denying of a motion for new trial rests within the discretion of the trial court,
and the court's decision should not be reversed on appeal absent an abuse of discretion. McIntire
v. State, 698 S.W.2d 652, 660 (Tex. Crim. App. 1985); Kiser v. State, 788 S.W.2d 909, 914
(Tex. App.—Dallas 1990, pet. ref'd). The same rule applies when the trial court denies the
motion for new trial without an evidentiary hearing. McIntire, 698 S.W.2d at 660; Kiser, 788
S.W.2d at 915. Questions concerning possible jury misconduct raised in a motion for new trial
must be determined by the court, and in the event of conflicting evidence, as the contradictory
affidavits in this case, the court does not abuse its discretion in denying the motion. Tollett v.
State, 799 S.W.2d 256, 259 (Tex. Crim. App. 1990).
      Although it is clear from the record that the jury experienced some difficulty reaching a
verdict on the allegation contained in count five of the indictment, the court could have concluded
that juror Owens changed her vote based solely on the evidence presented at trial. No abuse of
discretion by the court has been shown. Point four is overruled. 
      We affirm the conviction.
 
                                                                                     BILL VANCE
                                                                                     Justice
Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Affirmed
Opinion delivered and filed January 19, 1994
Do not publish